[No. 18253.    Department Two.—March 30, 1894.]

H. O. MATHEWS ET UX., RESPONDENTS, *v.* J. T. DAVIS, DEFENDANT, AND JOSIE ELTINGE, APPELLANT.

HOMESTEAD—SEPARATE PROPERTY OF WIFE—UNACKNOWLEDGED CONTRACT FOR DEED—SPECIFIC PERFORMANCE.—An unacknowledged executory contract signed by a husband and wife to convey a homestead properly claimed under the laws of the state, which is the separate property of the wife, cannot be specifically enforced.

ID.—ACKNOWLEDGMENT BY MARRIED WOMAN.—The acknowledgment by a married woman is an essential part of the execution of a conveyance from her, without which it has no validity.

ID.—TENDER OF ACKNOWLEDGED DEED—REFUSAL OF PAYMENT—LACHES. The tender of an executed and acknowledged deed cannot avail an applicant for specific performance of an unacknowledged contract for the conveyance of the homestead of a married woman, when payment of the purchase money was refused, and a lapse of twelve to fourteen years occurred after the tender, during which time many thousands of dollars in improvements had been expended upon the premises.

ID.—SPECIFIC PERFORMANCE—INJUSTICE NOT ALLOWED.—A specific performance of a contract to convey real property will not be decreed, even upon a valid agreement, where, upon all the equities presented, such decree would be promotive of injustice; but in such case the parties will be left to assert their rights, if any they have, at law.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Daniel Titus,* for Appellant.

The delivery of the deed, fully executed, to Hewel, to be delivered to Davis or his daughter on payment of the three thousand five hundred dollars was an escrow. And after the payment of three thousand five hundred dollars, the grantors lost all control over it, and the depositary became the agent of the grantee, and held the deed for her.    (1Addison on Contracts, page 51, bottom of page, and note at foot of page; *Farley* v. *Palmer,* 20 Ohio St. 223; Civ. Code, sec. 1057; *Cannon* v. *Handley,* 72 Cal. 133; *McDonald* v. *Huff,* 77 Cal. 279; *Bostwick* v. *McEvoy,* 62 Cal. 496.)    The contract could be specifically

enforced against Davis after performance by the plaintiffs. (Civ. Code, sec. 3386.) Plaintiffs are estopped from denying the validity and binding force and effect of the contract between them and Davis. (Herman on Estoppel, sec. 1055; 2 Pomeroy's Equity Jurisprudence, 814; *Reis* v. *Lawrence,* 63 Cal. 129; 49 Am. Rep. 83; *Hand* v. *Hand,* 68 Cal. 135; 58 Am. Rep. 5.)

*Scrivner' & Schell,* and *John B. Hall,* for Respondent.

The agreement of August 1, 1878, was absolutely null and void for want of the statutory acknowledgment. (Civ. Code, secs. 1093, 1186, 1187, 1215, and 1242.) The wife signing but not acknowledging a contract of sale is not estopped in favor of the purchaser from claiming her separate interest in the property. (*Tolman* v. *Smith,* 74 Cal. 345; *Danglarde* v. *Elias,* 80 Cal. 65; *Carlton* v. *Williams,* 77 Cal. 89; 11 Am. St. Rep. 243; *Jackson* v. *Torrence,* 83 Cal. 521; *Banbury* v. *Arnold,* 91 Cal. 606.) Laches bars any right the defendants or either of them may have had to the relief now sought by the cross-complaint. (*Curtner* v. *United States,* 149 U. S. 662; 13 Sup. Ct. Rep. 985; *Taylor* v. *Longworth,* 14 Pet. 172; *Speidel* v. *Henrici,* 120 U. S. 377; *Richards* v. *Mackall,* 124 U. S. 183; *Henderson* v. *Hicks,* 58 Cal. 364; *O'Donnell* v. *Jackson,* 69 Cal. 622; *Fowler* v. *Sutherland,* 68 Cal. 414; *Molaskey* v. *Peery,* 76 Cal. 84; *Requa* v. *Snow,* 76 Cal. 590; *Bailey* v. *Fox,* 78 Cal. 389; *Wood* v. *Fox,* 8 Utah, 380; *Chapman* v. *Bank of California,* 97 Cal. 155.)

The COURT.—This action is brought by H. O. Mathews and Mary H. Mathews, his wife, to quiet their title, to obtain a decree that a certain agreement is a cloud upon their title to a lot of land by them owned and possessed, situate and being in the city of Stockton, county of San Joaquin, and to cancel and annul such agreement.

Plaintiffs had a decree as prayed for, from which and from an order denying a motion for a new trial the defendant, Josephine Eltinge, appeals.

The facts as found by the court are not assailed for want of evidence in their support, by the brief of appellant.

They are too lengthy to be reproduced here, but may be epitomized thus:

1. Plaintiffs are, and since a date prior to July 16, 1875, have been, husband and wife, and have resided upon, owned, and occupied the land described in the complaint.

2. On the sixteenth day of July, 1875, the plaintiffs made their declaration of homestead, in due form as by law required, acknowledged, filed, and had the same recorded, have never abandoned, and still retain, the same as a homestead.

3. On the first day of August, 1878, plaintiffs and J. T. Davis, one of the defendants, and who made default herein, signed and delivered to said Davis an agreement, which recited that Josie Davis (now Josie Eltinge) the daughter of defendant Davis, was in the care and custody of plaintiff, that they had no children of their own and entertained for her the affection of parents for a child, and have intended that their property shall, upon the death of the last of them, inure to her benefit, and whereas the property described in the complaint is subject to a mortgage of about three thousand five hundred dollars.

In consideration of all of which and of a promissory note made to them by John T. Davis for three thousand five hundred dollars, payable to them on or before September 12, 1878, to enable them with said amount to remove the lien upon their property, the plaintiffs agreed that, upon the payment of said promissory note according to its terms, they would execute and deliver to said Josie Davis a deed to take effect and become absolute upon the death of the survivor of the plaintiffs, until which time plaintiffs, or the survivor of them, were or was to have possession, control, and use of the property, and were to keep the same in repair, etc.

If the property came to the possession and ownership

of Josie Davis during the lifetime of her father, John T. Davis, she was not to have the right or power of alienation without his consent and joinder in the same.

4. The foregoing agreement was not acknowledged or certified so as to entitle it to record by plaintiffs, or either of them, but was acknowledged and recorded by Davis on the thirteenth day of April, 1892.

5. Davis made and delivered his promissory note as specified in the agreement, but on or about the sixth day of August, 1878, and before the note became due, he repudiated the whole agreement, so notified the plaintiffs, and demanded a return of the note.

6. Davis has never retracted his notice to plaintiff, has never paid the note, or complied with any part of the agreement.

7. Defendant Josie Eltinge, the defendant herein, is the Josie Davis mentioned in the agreement.

8. Neither of the defendants demanded the deed or conveyance from plaintiffs to Josie Davis until May 3, 1892, when they made such demand.

9. The real property has enhanced in value since August, 1878, and is now worth twenty thousand dollars as against five thousand dollars at said date.

10. Plaintiffs have paid all taxes on the property, and have expended thereon more than ten thousand dollars.

11. Plaintiffs have suffered detriment by the failure of Davis to pay the note.

12. In 1879 plaintiffs obtained a judgment against John T. Davis on said note, issued execution, which was levied upon certain wheat, the property of one Vancil, the wheat sold, and the execution returned satisfied. No property of defendant Davis was ever levied upon, and none was taken from his possession.

13, 14, 15, 16. On the seventh day of October, 1878, plaintiffs executed a deed as provided for in the agreement, placed it in the hands of A. Hewel, who had guaranteed their compliance with the agreement, for the sole purpose of having a tender made, with demand of payment of the note, all of which was done by Hewel.

Davis never offered to pay the note or demanded a deed. It was subsequent to such tender that the action was brought on the note.

17, 18. After the tender of the deed, demand of payment of the note, and refusal, Hewel had no authority to deliver the deed.

19. In 1892 Charles S. Eltinge represented himself as the husband of defendant, Eltinge, demanded the deed of Hewel, which demand was refused.

The findings further show that the real estate in question, before it became a homestead, was the separate property of Mary H. Mathews, and was never community property.

That a prominent object of plaintiffs in entering into the agreement was to clear their homestead from the lien thereon, which, by the refusal of Davis to pay the note, they were not only prevented from doing, but by the litigation which followed, they were involved in costs to the amount of five thousand dollars.

That the agreement was not mutually beneficial to the parties, and was of no benefit, but the occasion of loss and injury to them, etc.

That defendant Davis did not make the agreement or note in good faith, and never at any time intended to perform or pay the same.

That defendant Eltinge had notice of the facts connected with the suit upon the note, and the result thereof, about the time they occurred, etc.

Defendant Eltinge, in her cross-complaint, filed by leave of the court, asks that the deed executed by plaintiffs, and tendered by them at the date of the demand of payment of the promissory note, be decreed to be delivered to her, etc.

As defendant, John T. Davis, made default, plaintiffs were entitled to a decree as against him, and the only question involved is as to the right of defendant, Josie Eltinge, to the relief demanded in her cross-complaint.

The property in question being the separate property of Mary H. Mathews, and a homestead under the laws

of the state of California, at the date of the agreement signed by them in 1878, and that agreement not having been acknowledged by them, or by either of them, we fail to see how it can be specifically enforced.

1. "No estate in the real property of a married woman passes by any grant purporting to be executed or acknowledged by her, unless the grant or instrument is acknowledged by her in the manner prescribed by sections 1186 and 1191."   (Civ. Code, sec. 1093.)

A married woman can only be divested of her estate in the manner prescribed by statute, and, under the requirements of the statute, the acknowledgment by her is an essential part of the execution of the conveyance without which it has no validity.   (*Leonis* v. *Lazzarovich,* 55 Cal. 52, and cases there cited.)

In *Jackson and Thomas* v. *Torrence,* 83 Cal. 521, we held "that specific performance of the unacknowledged executory contract of a married woman to convey her real property cannot be compelled."   The reasoning of that case is conclusive here.   (*Banbury* v. *Arnold,* 91 Cal. 606; *Carlton* v. *Williams,* 77 Cal. 89; 11 Am. St. Rep. 243.)

2. Like considerations apply to the agreement in its relation to the homestead of the parties.

"The homestead of a married woman cannot be conveyed or encumbered, unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife."   (Civ. Code, sec. 1242.)

The homestead can only be conveyed in the mode prescribed by the statute.   (*Flege* v. *Garvey,* 47 Cal. 371.)

The husband alone cannot sell it.   The husband and wife jointly can only convey it by an instrument *executed and acknowledged* by both husband and wife.

The agreement of plaintiffs to convey the homestead, as a basis upon which to decree a specific performance of the contract, was invalid without an acknowledgment of the parties.

The contention that the plaintiffs in fact executed,

acknowledged, and tendered a deed in 1878 cannot avail the appellant.

It may well be that although their contract to convey was invalid, they were willing to execute it in 1878, but when payment was refused, it does not follow that after a lapse of twelve to fourteen years, during which time as appears they had expended many thousand dollars in improvements upon the premises, they should be compelled to convey the property.

The specific performance of contracts to convey real property will not be decreed even upon a valid agreement, where upon all the equities presented such decree would be promotive of injustice, and there is much in the findings of the court going to indicate that the decree here should be denied, irrespective of the invalidity of the agreement, and the parties left to assert their rights, if any they have at law.

These views are conclusive of the case, and the errors complained of in the admission and rejection of evidence, conceding them to be well founded, cannot change the result.

Upon the undisputed facts we are of opinion the judgment and order appealed from should be affirmed, and it is so ordered.