[S. F. No. 757.   Department One.—February 18, 1899.]

AMALIA LOUPE, Respondent, v. SIDNEY M. SMITH, Appellant.

VENDOR AND PURCHASER—CONTRACT OF MARRIED WOMAN TO CONVEY—NECESSITY OF ACKNOWLEDGMENT—AMENDMENT OF CODE IN 1891.—The amendments of the Civil Code made in 1891, leaving section 1093 of that code standing with meaningless references to repealed sections, did not operate to repeal the whole of that section by implication; but that section, omitting the references, is to be construed with section 1187 of the Civil Code, as amended in 1891, and as still requiring the acknowledgment of a married woman to an instrument of conveyance of her separate real estate.

ID.—SPECIFIC PERFORMANCE.—A specific performance cannot be en-
forced of an unacknowledged contract of a married woman to
convey her separate real estate when such contract was made at
a time when an acknowledgment was required to a conveyance
of her real estate.

ID.—DAMAGES FOR BREACH—CONSTRUCTION OF CODE—INVALID CONTRACT.
No action will lie against a married woman for damages for
breach of her unacknowledged contract made in the year 1894 to
convey her separate real estate. Section 158 of the Civil Code,
providing for the wife's ability to contract, did not affect the
requirement of an acknowledgment by her of an instrument
affecting her real estate, so long as that requirement survived,
and an unacknowledged contract by a married woman to con-
vey her real property, made after the amendments of 1891 to
the Civil Code, and prior to the amendments of 1895, was in-
valid for every purpose.

APPEAL from a judgment of the Superior Court of Santa
Clara County. W. G. Lorigan, Judge.

The facts are stated in the opinion.

Chickering, Thomas & Gregory, for Appellant.

John J. Roche, and William A. Bowden, for Respondent.

PRINGLE, C.—Appeal from judgment. Action to quiet title
brought by the respondent, a married woman. The appellant
answers, and files a cross-complaint, setting up a contract in
writing between the parties for the exchange of the land described
in the complaint for lands of his own, with bonus of fifteen thou-
sand dollars to be paid by him. The consideration is the mu-
tual covenants of the parties. The contract is signed by both
parties, the husband of the respondent signing her name as her
attorney to the first contract, and the respondent affirming it
by a supplemental agreement signed by herself. But the con-
tract was never acknowledged by the respondent. The court be-
low held for that reason that it was not her contract, and gave
judgment in her favor. The case is an exceptional one, grow-
ing out of the transition state of the law in reference to married
women, when the code was gradually throwing off the disabilities
which were meant as a shield for her, but were often used by her
as a sword.

The appellant by his cross-complaint claims specific perform-
ance of the contract and damages for its breach. But deferring

to the ruling of this court in the cases of *Jackson v. Torrence,* 83
Cal. 521, *Banbury v. Arnold,* 91 Cal. 606, and *Mathews v. Davis,*
102 Cal. 202, which denied the relief of a specific performance
when there was no acknowledgment by the married woman, he
urges now only his claim for damages. His contention is, that
a denial of the gracious equitable remedy of a specific perform-
ance does not necessarily involve a denial of the legal remedy
in damages. His main contention, however, is that the cases
above cited were decided before the amendments to the Civil
Code of 1891, and that as a result of those amendments the ne-
cessity of any acknowledgment by a married woman was re-
moved. The contract was executed in December, 1894, between
the time of the amendments of March 19, 1891, and the amend-
ment of March 14, 1895.

The appellant's position is that the true effect of the amend-
ments of 1891 was to repeal all the provisions requiring an ac-
knowledgment by a married woman to a conveyance of her prop-
erty. If he is right in this position he would be entitled to a
specific performance.

The argument is based upon the implication of repeal attend-
ing the express repeals of 1891. The argument is necessarily
technical; and, in order to appreciate the scope and intent of the
repeals of 1891, it is best to put the sections before the eye as
they stood before and after the repeals.

Before 1891 they stood as follows:

"*The acknowledgment of a married woman to an instrument
purporting to be executed by her, must not be taken unless she is
made acquainted by the officer with the contents of the instrument
on an examination without the hearing of her husband; nor cer-
tified unless she thereupon acknowledges to the officer that she exe-
cuted the instrument, and that she does not wish to retract such
execution.*" (Civ. Code, sec. 1186.)

"A conveyance by a married woman has the same effect as if
she were unmarried, and may be acknowledged in the same man-
ner (*except as mentioned in the last section, but such conveyance
has no validity until so acknowledged*)." (Civ. Code, sec. 1187.)

*The certificate of acknowledgment by a married woman must be
substantially in the following form.* (Then follows the special
form of acknowledgment apart from the husband.) (Civ. Code,
sec. 1191.)

"No estate in the real property of a married woman passes by grant purporting to be executed or acknowledged by her, unless the grant or instrument is acknowledged by her in the manner prescribed by sections 1186 and 1191." (Civ. Code, sec. 1093.)

By this system a certain form of acknowledgment was required of a married woman to give validity to conveyances of her separate property. By the act of March 19, 1891, sections 1186 and 1191 and a part of section 1187, as italicized, were repealed. But 1093 was left unrepealed and unamended.

Undoubtedly, there was careless legislation, for the effect was to leave section 1093 with references made wholly meaningless by the repeal of the sections referred to in it. But the question presented is whether the *section* was left without meaning when these *references* were left without meaning. That the legislation was careless and awkward is no reason why the courts should not seek for a meaning in the "fragment" left. If by reasonable interpretation there is any force or significance discernible in the section, there is no repeal by implication. If there is no meaning in what the express repeals have left standing, they must be held to have repealed it by implication. The argument of the appellant is, that the repeals of sections 1186 and 1191 and of the latter part of 1187 leave no form or manner of acknowledgment provided for, and that the intention is apparent to require no acknowledgment at all.

Consolidate the provisions which survive the repeals of 1891 and the sections will read substantially as follows:

"Sec. 1093. No estate in the real property of a married woman passes by grant *purported to be executed* or acknowledged by her, unless the grant or instrument is acknowledged by her."

"Sec. 1187. A conveyance by a married woman has the same effect as if she were unmarried, and may be acknowledged in the same manner." By this collocation it is apparent that there is meaning left in section 1093 in spite of the amendment of section 1187—1187 as amended providing that a married woman may acknowledge, and 1093 providing that no estate shall pass unless she does acknowledge, the instrument. Thus 1093 can well exist, and be read in conjunction with 1187 as amended. A certain meaning, indeed, is obvious. The code provides for the

certification of an instrument, either upon acknowledgment by the party or upon proof by subscribing witness. It may be that in 1891 the code, in gradually removing the obstructions by which the law had protected the conveyances of a married woman, still designed to require of her to appear before an officer and make her personal acknowledgment. That formality might assist her to escape fraud, undue influence, or over-persuasion. It allowed some little *locus poenitentiae* before the instrument took effect.

But even if the effect of the amendments of 1891 were the result, not of design, but of careless legislation, the courts cannot amend what the legislature left unamended. So long as a definite and intelligible scheme is left, deduced from reading the two sections together, one does not efface the other. The position of the appellant that the repeal of the prescribed form of acknowledgment involves a repeal of the requirement of any acknowledgment is unsound. For section 1187 still provides "a conveyance by a married woman, et cetera, . . . . may be acknowledged," while section 1093 provides that no estate of a married woman passes "unless the grant or instrument is acknowledged by her." There is certainly no difficulty in reading the two together. We cannot relegate 1093 to the waste basket as the "lifeless fragment" the appellant calls it, when we find a decided meaning still surviving in it.

By the amendment of 1895, section 1093 was made to read as follows: "A grant or conveyance of real property made by a married woman may be made, executed, and acknowledged in the same manner and has the same effect as if she were unmarried." But this throws no light upon the question under consideration. For we cannot read the intention of the legislative repeals made in 1891 by the reflex light of a repealing act passed four years later.

The appellant cites three New York cases which, he claims, have a bearing on the question. (*Blood v. Humphrey*, 17 Barb. 660; *Andrews v. Shaffer*, 12 How. Pr. 288; *Yale v. Dederer*, 18 N. Y. 271; 72 Am. Dec. 503.) But they will be found to have no analogy. The Revised Statutes contain the general provision that the acknowledgment of a married woman residing in the state shall not be valid unless taken apart from her husband,

et cetera, and no estate shall pass unless so acknowledged. The statutes of 1848 and 1849 provide that any married woman may take by gift, grant, devise, or bequest from any person other than her husband, and hold and convey in the same manner and with the like effect as if she were unmarried. The cases hold that, "when a married woman has received a grant in fee of lands since the passage of the act of 1848 and the amendment of 1849, she may convey the same in the same manner and with the like effect as if she were unmarried." It was simply the application of the new statute to property acquired and held under it.

The conclusion thus reached in reference to the effect of these amendments must defeat the appellant's claim for damages as well as for specific performance.

He founds his claim for damages upon the Civil Code, section 158, which is as follows: "Either husband or wife may enter into any engagement or transaction with the other, or with any other persons, respecting property which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts."

The purpose of this section is to release the wife from servitude to her husband, and to give her a larger power to contract than she had at common law. It is in the chapter on husband and wife, and not in the chapter on transfers; and while the old forms of acknowledgments were in force this section was never held to relieve the wife from the necessity of complying with those forms in contracts affecting her real estate. It had its own existence, while the other sections had theirs. It has its application to the wife's capacity of contracting, while the others provided forms for the acknowledgment of her contracts. And since the repeals of 1891, section 158 does not dispense with the use of whatever forms survived those repeals any more than it did before the repeals took effect. If the contracts of a married woman relating to her lands were invalid unless she used the forms of acknowledgment prescribed by section 1191, they were invalid in 1894, unless she made the acknowledgment re-

quired by section 1093; and it must follow that the respondent's contract of December, 1894, was invalid for every purpose.

I advise that the judgment be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.          Garoutte, J., Harrison, J., Van Dyke, J.