STRAYER, Appellant, vs. GIMBEL BROTHERS, Respondent.

*June 2—June 23, 1920.*

*Evidence: Parol evidence to explain ambiguity: Conversations with third person prior to written contract: Master and servant: Practical construction of agreement of employment: Effect.*

1. In an action on a written contract of employment, testimony as to a conversation by plaintiff with a third person concerning the terms of his employment, some time before the execution of the contract, the third person taking no part in the negotiations, was inadmissible to explain any ambiguity in the contract.

2. A long course of dealing wherein the employer submitted and the employee accepted monthly statements showing the compensation to be paid, was binding on the employee as a correct interpretation by the parties of the ambiguous contract of employment.

APPEAL from an order of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Reversed.*

The appeal is from an order reversing a judgment of the civil court of Milwaukee county and ordering a new trial in the circuit court.

Plaintiff brought this action for a balance of commissions alleged to be due him as a piano salesman for the defendant company. He claimed there was due him a balance of $1,521 for commissions for the sale of pianos upon a basis of eight per cent. of the gross price of all pianos sold by him. He alleges a contract for eight per cent. gross upon the selling price of all pianos, with a deduction of twenty per cent. for pianos which were returned or taken back by the defendant company after the purchasers failed to make the payments or carry out their contracts of purchase. The employment was in writing as follows:

"Milwaukee, Jan. 16, 1916.

"I have this day entered into a weekly engagement with *Gimbel Brothers,* at $30 each week drawing account, eight per cent. basis, twenty per cent. for repossessions. I have no other contract. No. 38.      JOHN W. STRAYER."

The trial court received the evidence of the plaintiff and of a Mr. Akers to explain the terms of this writing, as well as that of Mr. Forman, the superintendent of the store, who negotiated with plaintiff on the day this writing was signed.

The action was tried before a jury in the civil court and a verdict was returned in favor of the plaintiff. This verdict was set aside by the trial judge and a new trial ordered. A second trial was had before a jury, which brought in a special verdict awarding the plaintiff the sum of $1,446.75. The court ordered the plaintiff to remit $295.13 from the amount found by the jury or submit to a new trial. Plaintiff remitted the amount and judgment was entered for $1,151.62. Appeal was taken to the circuit court, which made an order reversing the judgment of the civil court and ordered a new trial in the circuit court. This is an appeal from such order.

For the appellant there was a brief by *Raymond J. Cannon*, attorney, and *A. W. Richter*, of counsel, both of Milwaukee, and oral argument by *Mr. Richter*.

For the respondent there were briefs by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Walter D. Corrigan*.

SIEBECKER, J. It appears that plaintiff on January 14, 1916, made a written application to *Gimbel Brothers* for employment as piano salesman, and on the following day the written memorandum of employment set forth in the foregoing statement was signed by him as a result of negotiations he had with B. J. Forman, the superintendent of defendant's store. This memorandum is treated as the contract between the plaintiff and defendant, and plaintiff bases his right to a recovery on it in this action. The civil court held this writing ambiguous and received parol evidence to explain its terms. Akers was a friend of plaintiff, who induced him to make the application to defendant for employ-

ment as a piano salesman. The conversation with Akers which was received in evidence took place several days before plaintiff negotiated with B. J. Forman as defendant's superintendent for the position of piano salesman. It is clear that Forman was the authorized representative of defendant to make this contract with plaintiff and that on January 15, 1916, he had negotiations with him which resulted in the written contract. It also appears that Akers did not participate in the negotiations between plaintiff and Forman. Under these facts and circumstances the holding of the circuit court that any conversation plaintiff may have had with Akers concerning the terms of his employment by defendant several days before plaintiff negotiated with Forman was incompetent and that its admission in evidence to explain any ambiguity in the written contract constitutes an error which requires that the verdict be set aside, is correct. These conversations so admitted were in effect an interpretation of the written contract, as plaintiff claims, and negatived the interpretation asserted by the defendant. The ruling in *Hammond v. Capital City M. F. Ins. Co.* 151 Wis. 62, 138 N. W. 92, and *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43, does not justify the admission of this prior conversation with Akers as proper and competent evidence to explain the terms of the written contract made by plaintiff with Forman.

The defendant contends that the court erred in not awarding judgment dismissing plaintiff's complaint upon the grounds that it is undisputed in this case that plaintiff throughout his employment accepted monthly statements from defendant showing that under the written contract he was entitled to a commission of eight per cent. on net sales. It is undisputed that the monthly statements showing plaintiff's sales and what credits for repossessions were to be charged against his sales were received and accepted by him without objection. This long course of dealing between the parties is of controlling weight in determining the correct

interpretation of the written agreement and must be accepted by the court as its correct interpretation by the parties. Such conduct is binding on plaintiff under the facts and circumstances of the case. This construction of the contract is also supported by the testimony of Forman to the effect that in the negotiations between himself and plaintiff resulting in the written memorandum of the contract on January 15, 1916, it was understood that the eight per cent. commission was to be allowed him on his net sales. This conversation the plaintiff does not contradict, and it harmonizes with his conduct in accepting monthly statements of his account on the eight per cent. net basis. These facts are verities in the case and entitled the defendant to a judgment dismissing the plaintiff's complaint.

*By the Court.*—The order appealed from is reversed, and the cause remanded to the circuit court with direction to enter judgment dismissing plaintiff's complaint upon the merits.